NASD DISPUTE RESOLUTION, INC. and New York Stock Exchange, Inc., Plaintiffs,

v.

JUDICIAL COUNCIL OF CALIFORNIA; Ronald M. George, in his official capacity as Chair of the Judicial Council, et. al., Defendants.

No. C–02–3486–SC.

United States District Court, N.D. California.

Nov. 12, 2002.

Ethan D. Dettmer, F. Joseph Warin, Mark A. Perry, Gibson, Dunn & Crutcher, LLP, San Francisco, CA, John J. Flood, NASD, Inc., Washington, DC, for NASD Dispute Resolution, Inc.

Douglas W. Henkin, Milbank, Tweed, et al., New York City, Linda Dakin–Grimm, Milbank, Tweed, et al., Los Angeles, CA, M. Benjamin Valerio, Los Angeles, CA, for New York Stock Exchange, Inc.

Joseph W. Cotchett, Cotchett, Pitre & Simon, Burlingame, CA, Mary Maloney Roberts, Michael Bergeisen, Judicial Council of Cal., Admin, Office of Courts, San Francisco, CA, for Judicial Council of California, Ronald M. George, Marvin R. Baxter, Richard D. Alrich, Norman L. Epstein, Richard D. Huffman, Gail Andrea Andler, Aviva K. Bobb, Robert A. Dukes, Leonard P. Edwards, William C. Harrison, Brad R. Hill, Donna J. Hitchens, Ronald M. Sabraw, Barbara Ann Zuniga, Martha Escutia, Ellen M. Corbett, John J. Collins, Pauline W. Gee, Rex A. Heeseman, Thomas J. Warwick, Jr., William C. Vickery

Giovanni P. Prezioso, Securities and Exchange Com'n, Washington, DC, for Securities and Exchange Com'n.

Amy J. Winn, Atty. General's Office, Sacramento, CA, for Atty. Gen. of State of Cal.

Paul R. Kiesel, Raymond P. Boucher, Kiesel, Boucher & Larson, Beverly Hills, CA, for State Senate of Cal. Legislature.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

CONTI, District Judge.

### I. INTRODUCTION

In September 2001, the California legislature enacted SB 475, a bill imposing new regulations upon arbitration. The new law directed the California Judicial Council to draft ethical standards for arbitrators and provided that failure to abide by those standards could be grounds for vacating an arbitration award. By its terms, SB 475 is applicable to all arbitrations in California. NASD Dispute Resolution, Inc. and the New York Stock Exchange, Inc. ("Plaintiffs") have sued the Judicial Council, however, seeking a declaratory judgment that, as applied to them, the ethical standards set by the Judicial Council are preempted by federal law. The Judicial Council has moved for dismissal, arguing that this court lacks subject matter jurisdiction, that the case fails to present a justiciable controversy, that the suit is barred by the Eleventh Amendment, and that this court should abstain from deciding the case. For the following reasons, this Court finds that it has subject matter jurisdiction and that Plaintiffs have presented a justiciable claim, but concludes that the claim is barred by the Eleventh Amendment. Accordingly, Plaintiffs' claim must be dismissed, and this Court need not reach the issue of abstention.[1]

---

1. Also before the Court are Plaintiffs' motion to dismiss defendants Chief Justice George and Justice Baxter and Plaintiffs' motion for summary judgment. Defendants have stated that they do not oppose the former motion so long as those defendants are dismissed with prejudice. Plaintiffs have not asked for dismissal with prejudice, however, and the dispute about whether to dismiss those particular plaintiffs with or without prejudice turns on some of the same legal issues as the dispute about whether to dismiss the entire case.

Since this court's decision with respect to the entire case moots the debate with respect to the dismissal of the particular defendants, this Court will not rule on that particular motion.

Plaintiff's motion for summary judgment turns on the merits of the case. Since this Court decides, as this opinion discusses in detail, that it is barred by the Eleventh Amendment from addressing the merits of the case, the motion for summary judgment also is denied.

## II.  BACKGROUND

The California Judicial Council, defendant in this case, is a state governmental body created in accordance with the California Constitution. Cal. Const. art. VI, § 6. Its members are drawn mostly from the California Judiciary, though a few are private attorneys. *Id.* Pursuant to the directives of the California Legislature, the Judicial Council is charged with creating rules and suggesting reforms to ensure the effective administration of justice in California.[2]

In 2001, the California Legislature passed and Governor Gray Davis signed SB 475, which required the Judicial Council to "adopt ethical standards for all neutral arbitrators effective July 1, 2002." Cal. Code Civ. Proc. § 1281.85. In accordance with this new law, the Judicial Council adopted ethics standards applicable to all arbitrators in California. Those standards include extensive requirements for disclosure by the arbitrator of information possibly relating to potential biases or conflicts of interest. An arbitrator may be disqualified on the basis of this information, and failure to comply with the ethics standards can be grounds for vacating an arbitration award. Cal.Code Civ. Proc. §§ 1281.91, 1286.2. SB 475 did not give the Judicial Council any authority to enforce the ethical standards, however, and no such authority exists elsewhere in California law.

Plaintiffs are national securities exchanges. Each provides arbitration services to its members. Those arbitrations are conducted in accordance with detailed guidelines prepared by the arbitration services but approved, in accordance with federal law, by the United States Securities and Exchange Commission (SEC). *Shear-son/American Express v. McMahon,* 482 U.S. 220, 234, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Defendants now argue that their obligations under the California standards differ from and conflict with their obligations under their own rules. They also argue that ensuring that their members' arbitrations comply with the California rules would force them to incur substantial recordkeeping expenses and might cost them the services of many of their arbitrators. They have sued the California Judicial Council and, in their official capacity, its members, seeking a declaratory judgment from this court that federal law preempts the California standards.

Defendants argue that the California standards are not preempted. In addition, they assert that this court lacks subject matter jurisdiction over the claims, that the claims raise no justiciable controversy, that the claims are barred by the Eleventh Amendment, and that this court should abstain from hearing the case.

## III.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Federal courts have limited jurisdiction, and Plaintiffs must establish that their claims fall within that limited jurisdiction. *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In responding to a motion to dismiss, however, a plaintiff need not offer detailed proof; "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiffs assert that this court has diversity and federal ques-

---

**2.** Article VI, § 6 states, in part: "To improve the administration of justice the council shall survey judicial business and make recommendations to the courts, make recommendations annually to the Governor and Legislature, adopt rules for court administration, practice and procedure, not inconsistent with statute, and perform other functions prescribed by statute."

tion jurisdiction, and either must show that a federal question arises out of Plaintiffs' complaint or must establish the existence of complete diversity of citizenship between all defendants and all plaintiffs. 28 U.S.C. § 1331; 28 U.S.C. § 1332.

### B.  Justiciability

Article III of the U.S. Constitution limits federal courts to resolving cases or controversies. In accordance with Article III, the federal courts may hear only present disputes between parties with concrete, adverse interests. *Flast v. Cohen,* 392 U.S. 83, 96–97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The federal courts may not issue advisory opinions, hear unripe or moot cases, or decide cases brought by plaintiffs without standing. *Id.; Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

In order to have standing, a plaintiff must have suffered "injury-in-fact." *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130. Such injury must be "concrete and particularized," and "actual or imminent," not "conjectural or hypothetical." *Id.* (citations omitted). The injury must be "fairly traceable" to the defendants' conduct and must be redressable through the relief sought from the court. *Id.* at 560–61, 112 S.Ct. 2130.

A case is not ripe until the dispute has metamorphosed from a hypothetical controversy into a present, concrete, conflict. *Abbott Laboratories,* 387 U.S. at 148, 87 S.Ct. 1507. Ripeness doctrine prevents premature judicial involvement in disputes that might otherwise disappear or become clarified through further factual development. *Id.* A party need not wait for actual injury to occur, but ripeness requires at least an "immediate dilemma" in which the issues at stake are thoroughly defined, more factual development will provide lit-

tle more clarity, and delaying adjudication is likely to lead to injury. *Id.*

### C.  Eleventh Amendment

The Eleventh Amendment establishes a general bar against suing a state in federal court. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Eleventh Amendment immunity extends beyond the state itself and also prohibits naming state agencies and departments as defendants. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Shaw v. State of Cal. Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 603–04 (9th Cir.1986).

The Eleventh Amendment does not, however, prohibit suing state agents in their official capacity where the plaintiff seeks to prevent those agents from violating federal law. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Agua Caliente Band of Cahuilla Indians v. Hardin,* 223 F.3d 1041, 1045 (9th Cir. 2000). Ex parte Young set forth the "fiction" that since the state lacks the power to grant its agents authority to act in violation of federal law, any official who acts in violation of federal law, even if he does so in accordance with state law, ceases to be a state agent, steps outside the Eleventh Amendment's immunity, and may be sued in federal court. *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. 441; *Agua Caliente Band of Cahuilla Indians,* 223 F.3d at 1045.

The fiction has limits. The relief sought must be prospective and cannot implicate the state treasury. *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347; *Agua Caliente Band of Cahuilla Indians,* 223 F.3d at 1045. The defendant sued must be a state officer with some connection to the enforcement of the challenged law. *Ex parte Young,* 209 U.S. at 156–57, 28 S.Ct. 441; *Los Angeles*

*County Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir.1992). Finally, allowing the suit to proceed must be consistent with the federalism principles underlying 11th Amendment Jurisprudence; the Supreme Court has cautioned against formalistic application of *Ex parte Young* where traditional state interests are at stake. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).

## IV. *DISCUSSION*

### A. Subject Matter Jurisdiction

Defendants claim this Court has neither diversity nor federal question jurisdiction and dispute Plaintiffs' argument that § 78aa of the Securities Exchange Act confers exclusive jurisdiction over the case to the federal courts. The court agrees that it lacks diversity jurisdiction and that Section 78aa does not apply to this case, but finds that Plaintiffs' preemption claim provides a basis for subject matter jurisdiction.

### 1. Diversity

■ In order for this court to have diversity jurisdiction, a plaintiff must demonstrate that all plaintiffs have citizenship in different states from all defendants. Plaintiffs cannot make this showing, however, for Defendants have no citizenship for purposes of establishing diversity.

Neither a state nor its agencies or subdivisions are citizens for purposes of establishing diversity. *Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1381–82 (9th Cir.1988). Likewise, a state official sued in his or her official capacity is considered, for purposes of establishing diversity, to be an alter ego of the state, and also lacks citizenship. *Id.* at 1382 n. 5. All defendants in this case are either state entities or individuals sued in their official capacity. Accordingly, no defendant has citizenship for purposes of establishing diversity, and this court lacks diversity jurisdiction.[3]

### 2. Exclusive Jurisdiction under 15 U.S.C. § 78aa

■ Plaintiffs argue that the Securities Exchange Act, 15 U.S.C. § 78aa, confers exclusive jurisdiction over this claim to the federal courts. The Court finds, however, that Plaintiffs have not presented the type of claim over which § 78aa grants exclusive jurisdiction.

Section 78aa states: "the district courts of the United States... shall have exclusive jurisdiction... of all suits in equity and actions at law brought to enforce any

---

**3.** Citing *Ex parte Young* and *State of Ohio ex rel. Seney v. Swift & Co.,* 270 F. 141 (6th Cir.1921), Plaintiffs urge that the individual defendants are not alter egos of the state and are citizens for purposes of establishing diversity. *Ex parte Young's* fiction does indeed draw this distinction, but it does so in the context of 11th Amendment analysis. The Supreme Court has been reluctant to apply that fiction even within 11th Amendment cases, let alone extend it to other contexts. *See Coeur d'Alene Tribe of Idaho,* 521 U.S. at 269, 117 S.Ct. 2028. Moreover, this argument has been considered and rejected by most of the cases that discuss *Seney,* and other circuits have explicitly refused to extend *Ex parte Young's* principles to analysis of di-

versity. *See, e.g., Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 250–51 (7th Cir.1981) ("The fiction created by *Ex parte Young* has never been applied by the Supreme Court or this Circuit to determine whether a state is a party to an action for purposes of diversity jurisdiction... The *Seney* decision does not reveal, and we cannot conceive of, any compelling reason to employ the fiction of *Ex parte Young* to find diversity jurisdiction over actions such as the Illinois action."). The 9th Circuit, while not explicitly rejecting *Seney,* also has held that "a claim alleged against a state officer acting in his official capacity is treated as a claim against the state itself." *Morongo Band of Mission Indians,* 858 F.2d at 1382 n. 5.

liability or duty created by this chapter or the rules and regulations thereunder." Courts routinely have held that this provision gives federal courts jurisdiction when a party files suit seeking to compel exchange associations to comply with their arbitration rules. *See, e.g., Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1211–12 (9th Cir.1998) ("(Sparta alleged that) the foregoing actions of NASD were in direct violation of its own rules and procedures... Because Sparta's complaint sought relief based upon violation of the exchange rules, subject matter jurisdiction was specifically vested in the federal district court under the Exchange Act.").[4] The *Sparta Surgical Corp.* court reasoned that since the rules are approved by the SEC and since compliance is directed by the Exchange Act, a violation of the rules is a violation of the Act, and a suit to remedy that violation must be heard in federal court. *Id.*

Plaintiffs' dispute with the Judicial Council is quite different than those in *Sparta Surgical Corp.* and analogous cases. Plaintiffs are not seeking to remedy a violation of their rules; there is no effort to "enforce any liability or duty" set forth by those rules. Instead, plaintiffs wish for this Court to resolve the legal relationship between their rules and state law. Clarifying the relationship between two legal schemes is an entirely different matter than forcing a party to comply with a specific legal duty under one of those schemes, and, despite Plaintiffs' efforts to characterize it differently, this case simply is not an effort to remedy a violation of the Exchange Act.

### 3. Federal Question Jurisdiction

■ Plaintiffs argue that their preemption argument raises a federal question. The Court agrees, and on this basis has jurisdiction over this case.

In order to create jurisdiction, a federal question must appear on the face of the plaintiff's well-pleaded complaint. Where, as here, that complaint turns on a question of pre-emption, and thus is based both upon federal statutory law and the Constitution's Supremacy Clause, federal law necessarily is central to the claim. *See Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 122 S.Ct. 1753, 1758, 152 L.Ed.2d 871 (2002); *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990) ("Because PMSA and Tidewaters' complaints sought to enjoin enforcement of California law based on federal preemption, this case 'arose under' federal law, and the district court properly exercised jurisdiction over PMSA's action for injunctive relief.").

Defendants contest this basis for jurisdiction, arguing that the federal questions are more accurately characterized as anticipatory defenses to state law claims. Federal courts have declined to find jurisdiction in cases where a declaratory relief was sought in order to settle a legal issue

---

4. Defendants contend that *Petrie v. Pacific Stock Exchange, Inc.*, 982 F.Supp. 1390, 1394–96 (N.D.Cal.1997), precludes a finding of jurisdiction under § 78aa. Despite similar facts, the *Petrie* court reached a result that appears inconsistent with *Sparta Surgical Corp.*, finding that a claim involving a violation of SEC-approved internal rules was not subject to federal jurisdiction under § 78aa. The cases can be reconciled, however. The *Petrie* court noted that the plaintiffs had stated their claim entirely in terms of state contract law. *Id.* at 1394. Thus, although the plaintiffs perhaps could have stated a federal law claim, no federal question appeared on their complaint or was necessary to their case. In combination, these cases suggest that a violation of an exchange's SEC-approved rules may, but does not necessarily, give rise to exclusive federal jurisdiction; the specific nature of the plaintiff's claim will be determinative.

likely to arise in the course of defending an imminent state court proceeding. In these cases, the courts have concluded that the declaratory relief plaintiff was actually in the posture of a defendant, and that the request for declaratory judgment was in effect only the assertion of a defense. *See, e.g., Miller–Wohl Co. v. Commssioner of Labor and Industry, State of Montana*, 685 F.2d 1088, 1089 (9th Cir.1982). Here, however, Plaintiffs have not alleged the existence of any such specific actions and probably will not be parties to such actions when they do occur. The precedents set by *Miller–Wohl Co.* and analogous cases do not apply where a declaratory relief-seeking plaintiff is launching a general attack on the legality of a law rather than seeking to forestall a specific state court action.

### B. Justiciability

Defendants argue that plaintiffs have not suffered injury-in-fact and thus lack standing. In addition, defendants claim that the controversy is not yet ripe for decision.[5] The Court disagrees.

### 1. Standing

■ In order for a plaintiff to have standing, it must face "actual or imminent" and "concrete and particularized" injury. *Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. Defendants argue that, since the ethical standards have not yet been enforced, Plaintiffs have yet to suffer injury, and that the prospective enforcement of the standards is too uncertain to constitute imminent injury.

Plaintiffs allege, however, a present dilemma. By complying with the California standards, they argue, they will incur substantial recordkeeping costs, create conflict with their internal rules, and potentially lose the services of many of their arbitrators. Alternatively, Plaintiffs may deliberately ignore the California standards and risk engaging in voidable arbitrations.[6] Plaintiffs' third choice is simply to suspend arbitrations altogether; this, in fact, is what they have elected to do. In the first two scenarios, plaintiffs run the risk of violating the law and/or losing credibility and money. In the third, Plaintiffs lose all the benefits they had derived from offering arbitrations.[7] All of these injuries

---

5. Defendants also assert that plaintiffs seek an advisory opinion. This assertion is based on the asserted absence of injury-in-fact or a present conflict, however, and thus, though presented under separate heading, appears to be a restatement of Defendants' standing and ripeness arguments.

6. Defendants suggest that since the Judicial Council cannot enforce the standards, and enforcement will occur only when and if private parties seek vacation of arbitration awards, Plaintiffs would incur only speculative injury if they failed to comply with the standards. In support of this contention, Defendants cite *NAACP Western Region v. Richmond*, 743 F.2d 1346, 1350 (9th Cir.1984), in which the court stated that declaratory judgment is appropriate only if the plaintiff shows "he is seriously interested in subjecting himself to, and the defendant seriously intent on enforcing, the challenged measure." The *NAACP Western Region* court was assessing ripeness, however, not whether injury-in-fact

had begun to occur. More importantly, *NAACP Western Region* and subsequent cases clarify that the threat of enforcement is sufficient to establish ripeness so long as the potential enforcer has not provided some indication that the relevant rule is moribund. *Id.; Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 302, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The Judicial Council standards and the statutes that give them effect are both of recent vintage and can be enforced by any party to an arbitration. The chances that they are moribund are quite slim.

7. Defendants argue that Plaintiffs, by choosing the third option, have unnecessarily imposed injury on themselves. This may be true, but even if Plaintiffs selected an unnecessarily costly course of action, they have alleged that they were presented with a situation in which all options entailed harm. Thus, even if their own decisions exacerbated

are concrete, and, at least for purposes of surviving a motion to dismiss, their imminence is sufficiently supported by the general allegations in Plaintiffs' complaint. *See Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130 (stating that at the pleading state "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish jurisdiction).

In addition to injury-in-fact, a plaintiff seeking to prove standing must show both causation and redressability. Plaintiffs' dilemma stems directly from the Judicial Council's standards, and a declaration that the standards are pre-empted as applied to Plaintiffs would resolve that dilemma. Thus, Plaintiffs do have standing to assert their claim.

### 2. Ripeness

■ Defendants argue that Plaintiffs' claims are based on speculative future harms, and that until those harms are at least more certain to occur the case is unripe. The dilemma alleged by Plaintiffs, however, is quite similar to that found by the Supreme Court to present a ripe controversy in *Abbott Labs*.

In *Abbott Labs*, the plaintiffs were faced with a choice between defying a regulation or incurring substantial costs in complying. 387 U.S. at 152–53, 87 S.Ct. 1507. No enforcement had occurred, but the Court found that the issues at stake were fundamentally legal, and that delaying adjudication would harm the plaintiffs while providing no clarification of the issues at stake. *Id.* at 152–54, 87 S.Ct. 1507. The Court concluded that, with a concrete, clearly defined dispute crystallized between adverse parties, the case was ripe for decision. *Id.*[8]

In this case, as in *Abbott Labs*, Plaintiffs face a present choice between defying the guidelines or incurring substantial costs. Plaintiffs' preemption claim turns on issues of law, and further events are unlikely to significantly clarify those issues. The parties to the case are clearly adverse; Plaintiffs obviously have a strong stake in arguing that the standards are preempted, and the Judicial Council is similarly interested in upholding the standards' applicability.[9] However, the case is not ready for resolution because the proper parties are not before the court

### C. Eleventh Amendment

Defendants contend that they are protected from suit by the Eleventh Amendment. Plaintiffs do not seriously contest this argument with respect to the Judicial Council. Plaintiffs do argue, however, that their claims against the Council's members in their official capacity fall within the exception carved out by *Ex parte Young*, and that these claims should proceed. Because this Court is unpersuaded that *Ex*

their injury, they have successfully alleged harm arising out of the Judicial Council's actions.

**8.** The Court stated that "where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedures Act and Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance." *Id.*

**9.** Defendants also argue that the case is unripe because the SEC is currently considering Plaintiffs' internal rules and may recommend changes that eliminate conflict with the California standards. Until the SEC reaches its decision, Defendants suggest, adjudication will be premature. This argument overlooks the fact that plaintiffs have alleged a present conflict between the California standards and the rules currently in force. If the SEC does revise Plaintiffs' internal rules, it may moot the current conflict, but until that revision takes place, the current conflict, at least according to Plaintiffs' complaint, remains.

*parte Young* applies, it finds that all of Plaintiffs' claims are barred by the Eleventh Amendment.

### 1. The Judicial Council

██ Eleventh Amendment immunity extends to state agencies and departments. *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900; *Shaw*, 788 F.2d at 603–04. Not all state governmental bodies enjoy this immunity; counties and municipalities, for example, may be sued. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that the local education board could be sued because it bore more resemblance to a city or county than to an arm of the state). The Judicial Council, however, is a statewide body, created through the California Constitution for the sole purpose of establishing statewide policy and having none of the semi-independent powers and obligations of a municipality or county. Accordingly, it enjoys the full protection of the Eleventh Amendment and cannot, without its consent, be named as a defendant.

### 2. The Judicial Council's Individual Members

██ This suit arises from different facts than most *Ex parte Young* cases. In a typical case, the state enacts a law and the plaintiff then sues the potentially enforcing entity, challenging the law's constitutionality and seeking, through declaratory or injunctive relief, to prevent enforcement. In *Ex parte Young* itself, for example, the Minnesota Legislature passed a railroad regulation that ran afoul of the turn-of-the-

century Supreme Court's substantive due process jurisprudence, and the railroads sought an injunction preventing the Minnesota attorney general from enforcing the law.

This case arises from significantly different circumstances. Here, as in *Ex parte Young*, the state has created a law with applications that allegedly violate federal law. The creation of California's law was somewhat more complicated than the lawmaking in *Ex parte Young*, since the California statute mandated the creation of standards by an independent policymaking body, but the underlying initial circumstance—the creation of an allegedly unconstitutional legal obligation—is the same. After that point, however, the stories diverge, for here, rather than suing the attorney general or another party with enforcement authority, Plaintiffs' have directed their suit at the policymakers.

The difference is crucial. The foundation of *Ex parte Young* is the "fiction" that when a state officer enforces state law in a manner that violates federal law, he acts outside of any authority the state is capable of conferring and thus ceases to be a state agent. 209 U.S. at 159–60, 28 S.Ct. 441.[10] A claim based on *Ex parte Young* requires the allegation of a threatened or ongoing act in violation of federal law. Here, such an act is neither threatened nor ongoing.

Plaintiffs assert that the Judicial Council, in passing its standards, attempted to usurp federal law and thus violated the Supremacy Clause. The creation of a generally applicable, and in most circum-

---

**10.** Citing several cases following *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) defendants also argue that, regardless of the outcome of the Eleventh Amendment analysis, the individual defendants must be dismissed because the real party in interest is the state. In *Monell*, the city was not eligible for Eleventh Amendment immunity and *Ex parte Young* provided no basis for distinction between the city and its officers. Here, by contrast, the Judicial Council does have Eleventh Amendment immunity, and thus its individual officers cannot be assumed to be its alter egos without first determining whether *Ex parte Young* applies.

stances constitutional, policy cannot, however, be an unconstitutional act sufficient to trigger the applicability of *Ex parte Young*. If the Judicial Council acted unconstitutionally in passing such a policy, it would follow that any legislator or policymaker acts illegally any time he enacts a policy with any invalid application, no matter how valid the policy might be in all other circumstances. In other words, any time a policymaker creates a policy susceptible to an as-applied federal statutory or constitutional challenge, he violates federal law.[11] This would be a rather drastic conclusion.

The more accurate characterization of the Judicial Council's action is that it acted entirely legally but enacted a policy potentially subject to preemption by, and thus limitation under, federal law. Federal law may prevent particular applications of the ethical standards, but the creation of those standards was not itself a prohibited act. This is one reason why the typical *Ex parte Young* case involves a suit against the agents who might enforce the law in those potentially unconstitutional circumstances rather than the policymakers responsible for its drafting; the policymaking stage simply does not involve the requisite unconstitutional act that allows an *Ex parte Young* suit to proceed.

Plaintiffs seek to escape this conclusion by arguing that the Judicial Council, by obeying the Legislature's mandate that it draft guidelines, in fact was "enforcing" SB 475. This argument is based on a curious understanding of the word "enforce." *Black's Law Dictionary* defines "enforce" as follows: "To put into execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a judgment, or the collection of a debt or fine; to compel obedience to." *Black's Law Dictionary* 528 (6th Ed.1991). This definition accords with a common sense understanding of enforcement—that it involves giving particular effect to law's power of compulsion. This is a different matter from creating a generalized policy, especially when a law drafted by a separate body—here the California Legislature—gives that policy its coercive power and application of the law to particular situations will depend upon the actions of third parties.[12]

Plaintiffs also argue, citing *Los Angeles County Bar Ass'n v. Eu*, that they need not demonstrate an actual connection between the officials sued and enforcement of the policy. In *Eu*, the Ninth Circuit noted that the challenged law did not provide for any enforcement proceedings, concluded that the officials sued were more directly connected to the implementation

---

11. Alternatively, Plaintiffs may be suggesting that creation of the policy was at the same time consistent and inconsistent with federal law—in effect, that the creation of a policy was actually multiple acts corresponding to the multiple future situations in which that policy might be applied, and that those acts corresponding to future preempted applications were illegal and provide the basis for an *Ex parte Young* claim. This, however, requires accepting a rather nonsensical division of what appears to be one act of policymaking. *Ex parte Young* doctrine may already be based on a fiction, but this characterization would raise that fiction to unprecedented levels of impossibility.

12. *Black's Law Dictionary* does define "enforcement" as "the act of putting something such as a law into effect; the execution of a law; the carrying out of a mandate or command." *Id.* This last phrase might provide some basis for Plaintiffs' argument that the Judicial Council, in following the mandate of SB 475, was engaged in enforcement. Nevertheless, if this last phrase is interpreted within the context of those that precede it and not as a separate definition, the word "enforcement" still appears to encompass only the specific acts that give a law effect, not the standard-setting that helps define the law's meaning.

of the policy than any others, and allowed the suit to go forward. 979 F.2d at 704. Even in *Eu,* however, the defendant officials were likely to undertake specific implementing acts—namely, appointing officials—in accordance with the challenged law, and thus the underlying requirement that plaintiffs allege an impending violation of federal law was satisfied. Here, by contrast, the Judicial Council has no future role in enforcing the standards, and Plaintiffs have not demonstrated anything unlawful about the Council's past acts. Thus, Plaintiff has not shown that the Judicial Council's members have done or will do anything that would place them outside the scope of Eleventh Amendment immunity.

This result puts the Plaintiffs in a somewhat awkward position. They have alleged a conflict between federal and state law and have further alleged that the conflict will injure them. Yet, because the state law depends upon private implementation, Plaintiffs will be unable to find a government defendant to sue, and will have no choice but to wait for other parties to assert these arguments as defenses against the vacatur of an arbitration award. This result is in some tension with *Ex parte Young's* underlying purpose of preserving the supremacy of federal law, and the Supreme Court has cautioned that formalistic application of *Ex parte Young* doctrine should be limited by the federalism principles underlying the doctrine. *Coeur d'Alene Tribe of Idaho,* 521 U.S. at 269, 117 S.Ct. 2028. Nevertheless, the Court issued those warnings while refusing to apply the fiction; it does not follow from *Coeur d'Alene Tribe of Idaho* that a district Court should turn to the underlying policy justifications of *Ex parte Young* as a reason to extend the fiction. Accordingly, this Court sticks to a faithful application of *Ex parte Young* and will not expand the scope of *Ex parte Young's* exception to Eleventh Amendment immunity. Defendants enjoy the full protection of that immunity, and Plaintiffs cannot bring their claims in federal court.

## V. *CONCLUSION*

Plaintiffs have successfully established that this court has subject matter jurisdiction and that their case is justiciable. Eleventh Amendment immunity protects all of the defendants, however, and thus this case is dismissed.

IT IS SO ORDERED.